You can call the first case. Sure. 11-10-1876, People v. Jason and Daniel. Good morning, counsel. And if everyone could identify themselves, please. Good morning, Your Honors. Christine Cook, Assistant State's Attorney on behalf of the People. Good morning, Your Honor. Darren Miller, on behalf of the Independent F.L.A. Justice Committee. Thank you. And, counsel, if you want some rebuttal, you should save a couple of minutes for that. Thank you. May it please the Court. The issue before the Court below was a motion to quash, arrest, and suppress evidence. The trial court erred in granting that motion for two separate reasons, the first being that the trial court ignored the simple fact that there was a legitimate traffic stop performed upon this car, thereby as a matter of law, providing the officers with probable cause to arrest the defendant, who was the driver of that car, who had committed an improper lane traffic violation. The trial court below not only ignored that, but as a matter of fact, he held that as, because the defendant was originally handcuffed when the officers approached, that that turned into a per se constitutional violation, making it, in effect, an unconstitutional arrest, and that was the basis upon which the trial court granted the defendant's motion to quash and suppress. That, as a matter of law, has been conceded by the defendant to be error, and that was the entire basis for the trial court's motion. First, I'd like to address the probable cause issue pursuant to Atwater. This record is abundantly clear that the prosecutor in this case was never allowed to articulate her theory of defending this motion. She elicited facts pursuant to Atwater that would have allowed her to prevail on the motion. Specifically, when she was cross-examining Officer Maselli, she elicited the fact for several pages that the officer had pulled the defendant over for a traffic violation, thereby eliciting probable cause. The facts further elicited that the defendant did not pull his car over immediately. I'm a little concerned about the order of events in this case. The defendant allegedly stopped because of an illegal lane change, and then because the defendant failed to respond to the officer's demands to show both of his hands, and because of alleged furtive movements going up and down, that the officer thought that he might have been reaching for something. I'm curious about when the marijuana appeared to be visible to the police officer, because the order of that is not clear from the record. The door opened, the defendant was handcuffed, and then they saw the marijuana, or the door was open and the police officer saw the marijuana, and then the defendant was handcuffed. The facts actually are fairly clear. If you read the cross-examination, they come out a little more fully. Officer Maselli testifies that he sees the defendant's car turning northbound on Stony Island, and that he made an improper lane change, which has never been contested by this defendant. The officer then directioned for the defendant to pull over, and all three of the occupants were making furtive movements. All he could see were heads and shoulders, and they didn't pull over right away. They finally pulled over, and everybody continued in that car to make furtive movements. So the officer shouts several commands, show your hands, show your hands, we need to see your hands, get your hands up, and the back seat passenger has his hands literally out the window to comply with the officer's commands. These are officers that are apparently approaching now this car because the defendant and the front seat passenger have ignored the repeated commands. These officers are now approaching this car with their guns drawn, and they're still refusing to show either of their hands at any time, continuing to make furtive movements in the car. Officer Maselli testifies that he opened the car door. I believe it's on the cross-examination. He said, the prosecutor asked, did you open the car door for him? Because this defendant still will not show his hands despite repeated police commands to do so. Was he opening the car door? The defendant? With his hand? No. Which would make it difficult to show it if he's complying with the officer's commands. The officer testified he opened the car door, cuffed his first hand, and immediately saw the bag of cannabis on the car floor. So then by virtue of what you have just said, he was cuffed before he saw the marijuana. You said immediately cuffed him and then saw the marijuana. Yes. So then the issue of whether he was arrested immediately, isn't that resolved by virtue of what you've said? No, because they were ignoring him. Because he cuffed him, and then he saw the marijuana. And the marijuana was what led to the arrest. Is that not right? No. So you're saying that because there was no arrest when he handcuffed him? No. The whole problem, Your Honor, is the same analysis that the trial court engaged in. You're ignoring Atwater. You're ignoring the fact that these officers had probable cause to arrest this defendant for the minor traffic offense. So anything that happens after that is probable cause no matter what fluidity happens during that traffic stop. The law recognizes that many times somebody was arrested because he made an illegal left turn. That's what you're telling us. Well, the officer testified he did write the defendant a traffic ticket. I understand. But you're telling us that the defendant was arrested because he made an illegal left turn. That I don't know. Well, that's what you just said. No. I'm telling you that in an Atwater analysis, there is more than ample facts for this court to find that there was probable cause to arrest this defendant for that traffic violation. That finding was never made by the trial court because he never allowed the prosecutor to elicit that argument in her closing arguments before the court. The court was absolutely fixated on the handcuffing. And that is only relevant in a Terry analysis. That completely ignores the Atwater probable cause. Probable cause is probable cause. And it doesn't matter at that point what he winds up getting arrested for. Pursuant to Wren v. United States, Marsuic, and Florida v. Royer, all which are contained in the people's brief, the law recognizes that many times events transpire. They transform. They change. So it doesn't matter. Just pick one, anyone. Turn left. Probable cause is probable cause. Raise your hand. You know, fail to open the door, fail to anyone will do. Wouldn't it be a better argument for you that even under a Terry analysis, the police officers were permitted to handcuff the defendant for the officer's safety? That's another legitimate argument. That's our second argument. I think that that might be the legitimate argument. Okay, let's focus on that, Your Honor. You want to go up on something else and say that police officers are going to be able to handcuff anybody who violates a traffic law. I think you're going a little too far. That's absolutely not what I'm claiming. But that is what you said. No, that's not what I said. I said he had probable cause to arrest this defendant for the traffic stop. That's my argument. There was probable cause when he committed a traffic infraction for arrest. Can I just interrupt for one second? Assuming that we ruled that the state had the opportunity to argue probable cause to arrest based upon the traffic violation and they waived it, then would you argue your Terry argument? Yes. The defendant in his brief concedes that the trial court erred in finding that as a matter of law, that the brief and probably millisecond handcuffing of this defendant constituted a per se arrest. The trial court said you've made a traffic stop unlawful where somebody gets handcuffed. For future reference, anytime someone has cuffs on them, they're under arrest. The Supreme Court has said that, and I think it stands. The prosecutor challenged the trial court and said what case is that, Judge? In numerous cases, when you get stopped for a traffic violation, you don't get pulled out of your car and get handcuffed. Well, in the people's brief, and in their motion to reconsider, we cited a plethora of cases that certainly allows for officers to temporarily handcuff and detain somebody for officer safety. This record is replete with that evidence. Officer Miscelli consistently and chronically testified that he made demand after demand after demand after demand. Show your hands, show your hands, show your hands. Get your hands where I can see you. Get your hands where I can see you. There's a difference between detaining someone and arresting them. Yes. And you have said that that was probable cause for the arrest. Yes. That's the issue. Now, was he detained or was he arrested when they handcuffed him? I believe he was under arrest at that point. Although the record isn't really all that clear, I think this court can make that inference. The officer testified when he opened the car door, he grabbed his hand immediately because that was the first time the officer was ever able to see the defendant's hands, any of his hands for that point. And simultaneously, as he's slapping the one cuff on, he sees the bag of cannabis on the floor where the defendant had been reaching. This record is absolutely replete with evidence that that was a reasonable action. I don't know why you want to argue that an officer can arrest somebody for a traffic violation when under a Terry analysis, officers are permitted to handcuff without arrest for officer's safety. And, you know, the way you're going with this case, you're creating a situation where, you know, we would only have to avert. I mean, if you use a Terry analysis that officers are permitted to handcuff defendants for officer's safety, that's one thing. But if you want to go make a law and argue that on a traffic violation, an officer can arrest somebody and put them in handcuffs without safety precautions, you're going way past what any court has ever held. Respectfully, no, Justice, I'm not. Atwater v. City of Lago Vista came out in 2001 and allowed for full custodial arrest for minor infractions, for failure to wear a seat belt. And the second district in People v. Perry and Taylor, one in 1990 and one in 2009, allowed that. I'm concerned more with the Supreme Court than I'm concerned with what some appellate judge writes. Well, the U.S. Supreme Court has held that, Your Honor, in Atwater. It clearly held that. That was for a seat belt infraction. Well, I don't know. There's two roads here, and I'm showing you the road. You just want to go off on your own tantrum. I don't want to go off on my own tantrum. Go ahead. If you want to put your foot in your mouth and kick yourself, go ahead. You asked me about the probable cause. There was probable cause pursuant to Atwater for an arrest for a traffic violation. That's just the law. Going back to the Terry stop. The Terry stop, the judge's ruling was in error. A minor minute, not even a minute, it was probably a half a second handcuffing for officer safety, which nobody is disputing, was not an arrest pursuant to a Terry analysis in this case. If we're just going under Terry, that's not enough for arrest. There was officer safety issues. The record is replete with that evidence, and the trial court simply erred as a matter of law that any time a handcuff is put on a defendant, that it is a per se unconstitutional arrest. That is not the law. There was probable cause to arrest this defendant pursuant to Atwater in a Terry analysis. The judge's finding was flawed as a matter of law. There is no basis upon which this court can affirm this ruling. Respectfully, the people respectfully request that this court reverse that finding. Thank you. May it please the court. Let me ask you right off the bat, did the officer have a right to handcuff this defendant? Not based on the evidence that was presented, no. Well, if the guy's hands are all over the place and he doesn't comply with the officer's command, doesn't he have a right for safety purposes to handcuff somebody under those circumstances? As you're stating it, probably. However, you have to look at the way the evidence was presented by the state, and it was their burden in this case to show that the officer's safety was at issue. And part of that is to establish, is to put forth facts that the officer had reasonable and articulable basis to believe that his safety was at issue. And basically, the officer's testimony was only regarding the vague gestures that were made when he pulled the vehicle over. The officer never testified that the refusal, supposed refusal to raise hands, had anything to do with this. And if you look at the evidence, this all happened very quickly. The defendant was driving the car and taking the officer's word for it, didn't signal when he changed lanes. So he's pulled over for a nonthreatening minor traffic violation. It took, although the officer testified, it took him, he didn't immediately pull over. Well, the very next thing he said, it took him a half a block. I don't know how anyone could pull a car over more promptly than a half a block. An officer activates his MARS lights. It'll take the driver a moment to realize that they're even behind him, and then another moment to even realize that, well, maybe he's going to a different emergency. A half a block is nothing. So, and according to the officer, there were movements. He didn't specify what movements. I know the prosecutor was making gestures, but there's nothing in the record exactly what these movements were. They're vague movements. So you have people moving in a car when they're being pulled over for an innocuous offense. And the cases have held that such movements in and of themselves are not enough. I can point to the case I cited, Anderson, Brown, Johnson, and even the case the state cited, Rodriguez. It's always some type of a gesture plus something additional. Is the, what about the refusal to respond to the officer's request that they put their hands where they could be seen? We have three officers, but we also have three people in a car at 11 o'clock at night. Yeah, and officer concern is definitely something that this court should be concerned with as well as you should be concerned with officers' overreactions when it's not an issue. But whether or not that was an issue, the state never put that in the record. They never put down facts. He never testified that that was an issue, the raising of hands. In fact, one of the passengers, the passenger who did raise his hand was also taken into custody, which shows that whatever consideration he gave it was minimal to nothing. What are you saying? They never put that in the record. You're saying that that issue of raising the hands was only raised on appeal? No, there were facts. The officer testified as to facts that he gave a command. He didn't testify as to how loudly he gave the command, where he was when he gave the command, nothing to indicate to a trier of fact whether the defendant would have heard the command. In fact, he was in the front and the other person who raised the hands was in the back. It's even an inference to assume that the person who raised their hands was doing it in response to an order. You have to understand that when they pulled this car over, they approached three officers who were coming up to this car with guns. If this person in the back seat sees three officers approaching with guns, people can react differently. If you see three people approaching you with guns, someone might raise their hands. It was the state's burden to have the officer articulate to exactly why he believed his safety was at risk. Didn't he say he repeatedly yelled for them to get their hands up the back seat passenger, put his hands out of the window, that he repeatedly yelled, your hands, your hands, raise your hands? I'm not sure that the word yelled was used. Maybe I'm mistaken. He said, I don't know if he used the word repeatedly, but yeah, he testified that it was more than one time. Several movements, several. You're talking about the movements, not the raising of hands. But the movements alone are not enough. He was going down, reaching to the floorboard, isn't that what he said? Yeah, but you have in People v. Brown, the driver reached to the floorboard when he was pulled over for speeding, failed to signal, and actually when he failed to signal, almost hit the police car. And they held that that wasn't enough. Again, the furtive movements alone are not going to be enough. Weren't these movements continued movements? Not only were they several, they were continual? Yeah, there were more than one movement. But again, there was no testimonies to what type of movements these were, especially to the passengers. But did the officer testify he was afraid for his safety as a result of that? Yes, but it's an objective standard, not a subjective. And again, the state is required to put in the record, and he's required to articulate, why objectively he believed that his safety was at risk. And I think that's the issue here. Well, I mean, what else would he need to have done? He said he felt that his safety was in jeopardy. Well, part of the problem is we don't... What do you mean between the objective as opposed to the subjective evidence that he believed his safety? Well, if he was, in order for court to now analyze whether he was objectively afraid, or whether a person's position would be afraid... It's the reasonable man standard. We know that. Right. But, I'm sorry, I didn't mean to interrupt. I'm sorry. Please. Which was, you made a distinction between objectively as opposed to subjectively. Yes. And that the record was not clear. That the record was not established, the way it was presented. And what would have been required for the record to be established? Well, what should have been required, if the refusal to raise hands is to play a part in this, they would have to break down, and it's a state's burden, they'd have to break down more facts. They'd have to break down where the officer was, how much time did he have to react. For all we know, he said, show your hands, show your hands, show your hands, and he's right there within, maybe didn't have enough time to raise his hands. Well, I think Ms. Selley testified several times. He said, hands up, hands up, several times. To me, subjective means that which is in your mind. Correct. Objective means that there is evidence out there to show what somebody's doing. If the officer says, hands up, hands up, he sees these people with their hands all over the place, going down at the bottom of the car and everything else, you don't think that that's reasonable to conclude that maybe your safety is in trouble? It depends on how he said it, how much time he gave the person to react to how he said it. If he said it in a way where the window was up, he didn't say it loud enough, if the driver didn't have enough time for a reasonable person to react, then a reasonable officer shouldn't take that as a threatening situation. And that's my point. Well, there's no evidence here that he whispered it, is there? There's no evidence one way or the other, and it was the State's obligation. And there's no evidence as to where he was when he said it. Or, again, how quickly, how much time elapsed. I mean, I think this court can assume that if they were afraid, and what his testimony was was that he was afraid because of the gestures. That's what gave him his subjective fear. He didn't testify that it had anything to do with the raising of the hands. Well, I think if the facts are correct in my mind, that you all are kind of collapsing things. The officer said that he had pulled the car over or tried to pull the car over for a traffic violation. He saw all of these various furtive movements from the people in the car, and he was afraid because of the fact that he saw the movements, and he drew his gun. He didn't say, that's why he handcuffed the person. He said that's why he drew his gun as he approached the vehicle. Now, as he's approaching the vehicle and ordering people to put their hands out, the backseat passenger complies. So the backseat passenger, I mean, you can say that maybe he saw them coming and just did it, but the officer's testimony is he said it, and the guy put his arms out the window, and he, I look back at my facts, he did say it. He gave several requests, hands up, hands up, and the person didn't. And so he ordered the person out of the car. He has the right, I think you'll agree with me, to order the person out of the car. So the issue is with having the persons, three of them, make furtive movements continually in the car for whatever period of time, and then the driver not responding to several commands to show his arms, or show his hands, did the law allow the officer, in a Terry type situation, if there's an objective belief in officer safety, to put cuffs on? Right, I mean, well. Yes, can you answer? Yes, I will answer. Again, based on the facts here, I don't think the state laid enough to even get that far. Oh, that's where I got from reading the facts, as they unfolded that way. Right, but as far as where the officer was, and where the defendant was, and whether he would have hurt him. Right, they don't have the precision that I would do or you would do. Yeah, but even without that, I mean, if he hurt, how much time did he have to react? And all this plays into the officer's reasonable fear. But the court said the officer's fear was legitimate. No, I think that's another problem that we've had, is I believe the state's kind of misstating or over-exaggerating that aspect of what the judge said. When the judge said that, he was making an opinion that, yeah, in the bad neighborhood that it was in. I will acknowledge this, their fear is valid. That's what the judge said. Because, you know, I've been to 76 and Stony Island, et cetera. I mean, I know he's covered some of the things that he knows that he probably shouldn't have said. But he did say he acknowledged their fear is valid. Well, how could he acknowledge it if he hasn't judged what they just testified to? He acknowledged that it was valid, not legally valid, just basically subjective fear. He could understand why an officer would be afraid if he's pulling over a car and there is some gestures in an area. But if you look at later, he came to the conclusion there was no reasonable, objective basis for the fear. When you look at the context of the way that that was said, he was just acknowledging it. Hey, police are involved. It's dangerous work out there. I mean, at any time you pull a car over in a bad neighborhood for any reason, he could understand why there is a fear. But then he went on to say that this was an overreaction. You just don't go from, I think he said zero to 60 or whatever is based on movements. And just when you're pulling someone over for a routine minor traffic infraction, just to approach the car with guns and slap cuffs on everyone in the car just because you saw some movement in the car. Well, I think the trial judge kind of feel that, you know, for a traffic violation per se, you just don't go out and handcuff people. Correct. Isn't that what his feeling was? Yeah, that you don't just, and based on the movements. He said that you just don't go based on, and if you look at his ruling, he said, yeah, you know, people are going to make movements when they're pulled over. Someone might be looking to see what's going on or they're nervous or the defendant may be bent over looking for his driver's license or for his proof of insurance. I mean, it's one thing to say that a traffic violation, you know, is an arrest. And there's another thing to say that because it's an arrest, you go and handcuff people. I mean, there's quite a difference between the two concepts. Right, and I mean, which I guess brings to, I mean, counsel conceded that this is an arrest, which to me, they conceded that the Terry is not even an issue. And they forfeited the argument regarding arrest. They never argued it. And another issue that counsel made was trying to point to the judge as being unreasonable and not allowing the state to argue and continuing to interrupt. Well, I mean, I guess I could say that Your Honor is interrupting me. Having a discussion with a judge is not. We usually interrupt a lot more than we do now. But having a discussion with a judge is not interrupting. And they attached to their brief the motion to reconsider. They could have put that argument in the motion to reconsider. And it's not in there. They could have responded to the motion in writing. They didn't. And they could have said, Judge, we'd like to make this argument. This is, the arrest thing is just something that's been raised for the first time on appeal. It's thought up after the fact. The driver was not arrested for the minor traffic infraction. And they never claimed that down below because it just didn't happen. He was handcuffed because of the officer's fears. And they did not establish down below that those fears were objectively reasonable based on the evidence they presented. I see. So I guess you'd like us to write something, you know, that would say that when an officer is impaired, you know, they're going to have to establish and go through a bunch of hoops to show what caused that fear, how long they were impaired, every little thing that happened. No. I guess what I would like you to write is that the state conceded this was an arrest and they waived that issue. That would be the first thing I'd like you to write. But as far as that, no, I would like for this court to write that the state. I don't think they quite conceded it because they're arguing in the alternative. Yeah. But it's not making officers jump through hoops. It's having the state meet its burden. It's having them put in adequate facts and essentially to do their job. If there was a reasonable basis for this, put the facts out there and exactly have the officers testify as to what the fear was about, what caused them the concern. And there are cases out there that specifically hold that. That it's the state's job to get these facts articulated, that just putting the facts out there isn't enough. The officer has to testify as to what in his professional experience caused him to be based on those facts. And he testified as to nothing regarding the refusal to raise hands, didn't put in his police report, and cuffed the person who did raise his hands. So that to me is not a factor that he even considered. And he testified that it was all based on the movements alone, which isn't enough. So if there are no other questions, I'd ask that you affirm the trial court's decision to suppress the evidence. Thank you, counsel. Thank you. Counsel, you just have a couple of minutes. This was not our motion. This was defendant's motion. This wasn't our burden. This was defendant's burden to establish the police did not have probable cause to arrest him. And this record before this court does not meet that burden. It didn't meet that burden before the trial court, which is why the people are asking for reversal. In a probable cause determination, the facts elicited by this prosecutor clearly meet those of Atwater. In a Terry stop analysis, alternatively, as you noted, Justice Lankin, the judge stated, I will acknowledge this. Their fear is valid. And two pages later, I understand why I think it makes perfect sense why he acted the way he did. That's on 839. The trial judge in a Terry analysis with the handcuffs, the judge who was so fixated on the handcuffs and operated under the mistaken legal notion that a temporary handcuff is per se admissible, was wrong. Defendant concedes that in his brief on page 21. The handcuff analysis was the entire basis for granting the defendant's motion. That basis was in error as a matter of law, and as a matter of fact, based on what was elicited before the trial court. The defendant has never been able to meet his burden in this case. It was not our responsibility to meet the burden. The burden rested solely with the defendant, and he cannot meet it today. For all of those reasons, and those stated in our brief, the people respectfully request that this court reverse the trial court's granting of the defendant's motion to quash, arrest, and suppress evidence. Thank you. Thank you. The case will be taken under advisory. We are adjourned.